# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HOLOGENIX, LLC<br><br>　　　　Debtor,<br>_____<br><br>MULTIPLE ENERGY TECHNOLOGIES, LLC,<br><br>　　　　Appellant,<br><br>　　v.<br><br>HOLOGENIX, LLC,<br><br>　　　　Appellees.<br>_____ | Case No. CV 22-7510-FMO<br><br>(BK Case No. 2:20-bk-13849 BR)<br>(Adv. Case No. 2:22-ap-01098 BR)<br><br>**ORDER RE: BANKRUPTCY APPEALS** |

Having reviewed and considered all briefing and exhibits filed with respect to Multiple Energy Technologies, LLC's ("Met" or "appellant") and Hologenix, LLC's ("Hologenix[,]" "debtor[,]" or "appellee") Joint Brief Regarding Appellant Multiple Energy Technologies, LLC's Bankruptcy Appeal from Order Confirming Debtor's Chapter 11, Subchapter V Plan and Findings of Fact, (Dkt. 40-1, "Confirmation Joint Br."), Joint Brief Regarding Appellant Multiple Energy Multiple Energy Technologies, LLC's Bankruptcy Appeal of the Order Denying the Motion to Dismiss, (Dkt. 40-2, "Dismissal Joint Br."), Joint Brief Regarding Appellant Multiple Energy Technologies, LLC's Bankruptcy Appeal of Order Authorizing Debtor to Assume Employment Contract with Seth Casden, (Dkt. 40-3, "Contract Joint Br."), and Joint Brief Regarding Appellant Multiple Energy Technologies, LLC's Bankruptcy Appeal from (1) Findings of Fact, Conclusions of Law and (2)

Judgment, (Dkt. 40-4, "MSJ Joint Br."), the court finds that oral argument is not necessary to resolve the appeals, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND[1]

Hologenix is a business that develops and manufactures a thermo-reactive mineral compound called "Celliant" for use in various consumer products. (See Br. Dkt. 762, Findings of Fact and Conclusions of Law in Support of Order Confirming Debtor's Chapter 11, Subchapter V, Plan Dated January 24, 2022, Modified June 21, 2022 ("Confirmation FFCL") at 10). Met is one of Hologenix's competitors. (See id. at 11). On February 28, 2019, appellant filed a lawsuit alleging, among other things, that Hologenix had made false claims about Celliant as compared to Met's products, in violation of the Lanham Act, 15 U.S.C. §§ 1051, et seq. (See id.). On March 6, 2020, Met and Hologenix reached a settlement, which required Hologenix to pay $100,000 immediately and $2.4 million over time, of which $1.4 million was due on April 23, 2020. (See id.). The day before the $1.4 million payment was due, Hologenix filed a Chapter 11 bankruptcy petition and elected to proceed under subchapter V. (See id. at 16).

In the underlying bankruptcy case, the Bankruptcy Court denied Met's motion to dismiss, (see Br. Dkt. 760, Order Denying Multiple Energy Technologies, LLC's Motion to Dismiss Debtor Hologenix, LLC's Bankruptcy Case ("Dismissal Order")), granted Hologenix's motion to assume an executory contract with Seth Casden ("Casden"), (see Br. Dkt. 761, Order Authorizing Assumption of Executory Contract With Seth Casden ("Contract Order")), confirmed Hologenix's proposed bankruptcy plan (the "Plan"), (see Br. Dkt. 763, Order Confirming Debtor's Chapter 11, Subchapter V, Plan Dated January 4, 2022, Modified June 21, 2022 ("Confirmation Order")), and issued the Confirmation FFCL. (See Br. Dkt. 762). On December 7, 2022, the Bankruptcy Court, in an adversary proceeding, issued Findings of Fact, Conclusions of Law and Order (1) Granting Plaintiff's Motion for Summary Judgment and (2) Denying Defendant's Cross-Motion for Summary

---

[1] Because the parties are familiar with the facts and posture of the case, the court repeats them only as necessary.

Judgment (Adv. Pro. Dkt. 34, "MSJ Order"), and entered judgment accordingly. (See Adv. Pro. Dkt. 33, Judgment re: Motions for Summary Judgment ("Judgment")). Met now appeals from each of the above orders.

## DISCUSSION

The court has jurisdiction pursuant to 28 U.S.C. § 158. See 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals [ ] from final judgments, orders, and decrees . . . of bankruptcy judges[.]"). When reviewing a bankruptcy court's decision, a "district court functions as an appellate court . . . and applies the same standards of review as a federal court of appeals[.]" In re Crystal Props., Ltd., 268 F.3d 743, 755 (9th Cir. 2001) (internal quotation marks omitted).

I.   PLAN CONFIRMATION.

"The ultimate decision to confirm a reorganization plan is reviewed for an abuse of discretion." In re Brotby, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." Id.; United States v. Peninsula Communications, Inc., 287 F.3d 832, 839 (9th Cir. 2002).

Met argues, among other things, that the Plan discriminates unfairly because "[n]on-insider general unsecured creditors in Class 3 will recover 12.5% of their claims . . . which - at Debtor's election - may be reduced by 40% if paid within 90 days[.]" (Dkt. 40-1, Confirmation Joint Br. at 11). According to Met, the Plan is unfair because the "Debtor is really favoring the insiders in Classes 2A and 4 by preserving their right to be paid in full." (Id.).

Appellee counters that the only issue is "how to allocate the three-year's worth of projected disposable income" as described in 11 U.S.C. § 1191(c)(2) ("Section 1191(c)(2)" or "§ 1191(c)(2)"), and contends that Class 3 creditors are not unfairly discriminated against because the Plan allocates to them the full amount of debtor's projected disposable income for three years. (See Dkt. 40-1, Confirmation Joint Br. at 26-27). The Bankruptcy Court agreed with Hologenix, and found that "[w]ith the 'fair and equitable' treatment statutorily capped at three-to-five years of Disposable Income, creditors cannot demand anything more." (Br. Dkt. 762, Confirmation FFCL

at 68); (see id. at 69) (Bankruptcy Court stating that "Congress enacted a structure where creditors like MET and Class 3 are entitled to nothing more than three-to-five years' of projected Disposable Income. . . . After that three-to-five-year period, the Debtor and its insiders can pay whatever they find agreeable. And, in the meantime, the voluntary subordination of the Class 2 and 4 claims so as not to dilute Class 3 recovery only benefits Class 3.").

Section 1191(c) creates certain minimum requirements that must be satisfied for a court to find that a plan is "fair and equitable[.]" 11 U.S.C. § 1191(c). The statute includes one limitation on certain Chapter 11 plans that prohibits those plans from requiring payment of "all" of a debtor's disposable income for a period of more than five years. See id. However, the Bankruptcy Court appears to have treated this Section as creating two additional limitations on the scope of the Plan. First, the Court reasoned that the creditors' recovery was limited to disposable income. Second, the Court concluded that it could only consider provisions in the Plan for a five year period following confirmation. (See Br. Dkt. 762, Confirmation FFCL at 62) ("MET (and the Subchapter V Trustee) are incorrect because in the context of SBRA and subchapter V where Congress has limited MET's recovery to three years (and at most five years) of projected Disposable Income. . . . Against this backdrop, the Court finds and concludes that Class 3 is getting the most that is available under the Bankruptcy Code[.]").

This appears to reflect an incorrect application of the law. See Peninsula Communications, 287 F.3d at 839. Section 1191(c) provides that "[f]or purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements[,]" and § 1191(c)(2) goes on to discuss recovery of all disposable income for no more than five years. 11 U.S.C. § 1191(c), (c)(2) (emphasis added). The use of the word "includes" indicates that the list is not exhaustive – that is, a plan need not be limited to the provisions of that section. See, e.g., United States v. Wyatt, 408 F.3d 1257, 1261 (9th Cir. 2005) ("The use of the word 'includes' suggests the list is non-exhaustive rather than exclusive."); United States v. Hockings, 129 F.3d 1069, 1071 (9th Cir. 1997) (concluding definitional list using "includes" was "not drafted as an exhaustive list"); 2A N. Singer & J. Singer, Sutherland on Statutory Construction § 47.7 at 305 (7th ed. 2007) ("[T]he word 'includes' is usually a term of

4

enlargement, and not of limitation[.]") (internal quotation marks omitted). Thus, not only was the Bankruptcy Court required to consider whether Met's recovery was unfairly discriminatory in light of the disposition of assets beyond disposable income, it was also required to consider how Met's recovery compared to the recovery of other creditors during the entire duration of the Plan – not just the five years after confirmation. Here, the interpretation proposed by Hologenix would make little sense in light of the overall structure of the Plan, which provides Class 2 and 4 creditors with a recovery that exceeds "three years (and at most five years) of projected Disposable Income." (Br. Dkt. 762, Confirmation FFCL at 62). In other words, if Chapter 11 plans were truly limited to disposable income and capped at five years, the Plan's provisions for Class 2 and 4 creditors would contravene both requirements.

Two other provisions in the Bankruptcy Code reinforce this interpretation. First, under § 1191(c)(2)(A), a plan must "provide[] that all of the projected disposable income of the debtor . . . be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix[.]" 11 U.S.C. § 1191(c)(2) (emphasis added). Accordingly, a plan may not require that all – i.e., 100%, see A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them[.]") – of a debtor's disposable income be received beyond the five-year period. See 11 U.S.C. § 1191(c)(2). However, § 1191(c)(2)(A) does not prohibit the provision of some amount of disposable income that is less than 100% after five years; that is, a plan could require 100% of debtor's disposable income in years one through five, 75% in years six through eight, and so on. Cf. United States v. Herrera, 974 F.3d 1040, 1048 (9th Cir. 2020) ("Traditional statutory interpretation principles hold that where a definitional list designates certain things, all omissions should be understood as exclusions.") (internal quotation marks omitted); Nielsen v. Preap, 139 S.Ct. 954, 965 (2019) ("[T]he rules of grammar govern statutory interpretation[.]") (internal quotation marks omitted).

Second, Chapter 11 plans are not subject to the same temporal limitation as Chapter 13 plans. Section 1322(c) states that, subject to certain exceptions not relevant here, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1).

However, the relevant sections that apply to Chapter 11 plans do not contain an equivalent restriction, which indicates that Congress did not intend to place such a limit on those plans. See, generally, 11 U.S.C. §§ 1101, et seq.; see also United States v. LKAV, 712 F.3d 436, 440 (9th Cir. 2013) ("We also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation."); 11 U.S.C. § 103(j) ("Chapter 13 of this title applies only in a case under such chapter."). "[S]ection 1322(c) doesn't apply to Chapter 11 reorganizations" and the notion that a plan is invalid if it provides "a payment schedule that exceeds five years" is "without merit." In re Perez, 30 F.3d 1209, 1216 (9th Cir. 1994); see In re Jacobs, 644 B.R. 883, 905 (Bankr. D.N.M. 2022) ("[C]hapter 11 does not contain chapter 13's safeguards, including a maximum repayment period of five years[.]"); In re Cleary Packaging, LLC, 36 F.4th 509, 514 (4th Cir. 2022) ("Subchapter V also provides specific rules for discharge, requiring a court to grant discharge of all debts after approval of the plan except . . . any debt payable after the 3- to 5-year period specified for payment[.]") (emphasis in original).

In sum, the Bankruptcy Court erred in finding that Met was entitled to only "three-to-five years' of projected Disposable Income[,]" (Br. Dkt. 762, Confirmation FFCL at 69), which led the Bankruptcy Court to overlook a substantial part of the Plan, including the provisions entitling certain creditors to 100% recovery. Although the court makes no conclusion regarding whether the Plan unfairly discriminates against Class 3 creditors as compared to Class 2 and 4 creditors, it does note that the disparity between 12.5% (Class 3) recovery for some creditors and 100% (Class 2 and 4) recovery for others is dramatic.[2]

II.     MOTION TO DISMISS.

Appellant also challenges the Bankruptcy Court's denial of its motion to dismiss. (See Dkt. 40-2, Dismissal Joint Br. at 1). Among other things, Met argues that the denial of the motion was erroneous because the Bankruptcy Court did not consider the motion in light of the fact that the Plan was not confirmable. (See id. at 34-35). Appellee does not contest that if the Plan were not

---

[2] Because the court concludes that the above constitutes reversible error, it need not consider appellant's other challenges to the Plan.

confirmable, it would have been error to deny the motion to dismiss. (See, generally, id. at 36). Instead, in a single sentence, Hologenix reiterates its position that the Plan was properly confirmed. (See id.). Thus, the court will vacate the Bankruptcy Court's decision to deny appellant's motion to dismiss. See supra at § I.; see also In re Marshall, 721 F.3d 1032, 1049 (9th Cir. 2013) (finding that whether "a reorganization plan qualifies for confirmation" is "perhaps the most compelling grounds" for denying or granting "a motion to dismiss grounded on bad faith") (internal quotation marks and alteration omitted).

III. ASSUMPTION OF EMPLOYMENT CONTRACT.

Next, Met challenges the Bankruptcy Court's Contract Order (Br. Dkt. 761), which granted Hologenix's Motion for an Order Authorizing Assumption of Executory Contract with Seth Casden (Br. Dkt. 609, "Contract Motion"). (See Dkt. 40-3, Contract Joint Br. at 1). Met argues, among other things, that the Bankruptcy Court applied the wrong legal standard by evaluating the Contract Motion under the business judgment rule, not the "entire fairness" standard. (See id. at 27-29). Hologenix does not contest that the Bankruptcy Court applied the business judgment rule, (see, generally, id. at 31-33); (Dkt. 94, Supplemental Memorandum of Points and Authorities in Response to Multiple Energy Technologies, LLC's Portions of Joint Brief ("Contract Supp.") at 5-8), but argues that "[n]one of MET's cases for the 'entire fairness' doctrine have any application to the assumption of executory contracts[.]" (Dkt. 94, Contract Supp. at 5).

The "entire fairness" doctrine is a creature of Delaware law, and the cases cited by appellant involve the application of Delaware law in federal court. See, e.g., In re Furniture Factory Ultimate Holding, L.P., 2023 WL 5662747, *15 (Bankr. D. Del. 2023); Brown v. Brewer, 2010 WL 2472182, *3 (C.D. Cal. 2010) (relying on Delaware law to apply the entire fairness standard); Pereira v. Cogan, 267 B.R. 500, 508 (S.D.N.Y. 2001) (describing "the Delaware entire fairness doctrine") (internal quotation marks omitted). Although "California courts consistently have used the term 'inherent fairness' and have tended to view 'entire fairness' as a construct of Delaware law[,]" Simon v. Stang, 2010 WL 1460430, *5 (N.D. Cal. 2010), this distinction gets appellee only so far, because the court must still consider whether the Bankruptcy Court was required to apply the inherent fairness standard.

7

In In re Marquam Inv. Corp., 942 F.2d 1462 (9th Cir. 1991), on which Met relies, (see Dkt. 40-3, Contract Joint Br. at 28), the Ninth Circuit held that "[w]hen the validity of an insider's contract with a corporation is at issue, the burden is on the insider not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." Id. at 1465 (internal quotation marks omitted). Hologenix contends that Marquam is inapposite because it involved "an insider claim objection where the insider had woefully inadequate supporting documentation for his claim. . . . [Marquam was] not a case about insider executory contract assumption under 11 U.S.C. § 365." (Dkt. 94, Contract Supp. at 6).

Although Marquam did not involve an executory contract, see 942 F.2d at 1465-66, it nevertheless reiterated the longstanding rule that where an insider's "contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. . . . The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." Pepper v. Litton, 308 U.S. 295, 306-07, 60 S.Ct. 238, 245 (1939). Thus, "[t]he business judgment rule does not apply in circumstances which inherently raise an inference of conflict of interest[.]" In re AWTR Liquidation Inc., 548 B.R. 300, 318 (C.D. Cal. 2016) (internal quotation marks omitted). Marquam applied those requirements to an insider's contract that was contested in a bankruptcy proceeding. See 942 F.2d at 1465-66. Here, there appears to be no principled distinction between the contract at issue and the sorts of contracts that are routinely subject to the heightened scrutiny of the inherent fairness standard. Under the circumstances, the court is persuaded that the Bankruptcy Court erred by not evaluating the Contract Motion under the inherent fairness standard.

IV.   SUMMARY JUDGMENT.

Finally, appellant challenges the Bankruptcy Court's grant of Hologenix's motion for summary judgment in an adversary proceeding. (See Dkt. 40-4, MSJ Joint Br. at 1-2); (see also Adv. Pro. Dkt. 33, Judgment); (Adv. Pro. Dkt. 34, MSJ Order). The court reviews a bankruptcy court's summary judgment order de novo. See Sec. & Exch. Comm'n v. Stein, 906 F.3d 823, 828

(9th Cir. 2018).

Met argues that "[t]he Bankruptcy Court ignored key evidence concerning the mere conduit defense . . . that would have defeated summary judgment." (Dkt. 40-4, MSJ Joint Br. at 16). According to Met, the Bankruptcy Court failed to consider the Declaration of Nicole A Sullivan of November 1, 2022 (Adv. Pro. Dkt. 23, "Sullivan Decl."), which "presented a question of fact concerning the intent of the [$100,000] payment[.]" (Dkt. 40-4, MSJ Joint Br. at 16). Contrary to Met's contention, the Bankruptcy Court did "consider[] . . . the Declaration Of Nicole A. Sullivan[.]" (Adv. Pro. Dkt. 34, MSJ Order at 2). However, it gave it no weight because Ms. Sullivan failed to attach the exhibits that were referenced in her declaration. (See, e.g., Br. Dkt. 874, 11/22/2022 Hrg. Tr. at 36:23-25) ("A statement of counsel is not evidence . . . without the papers to show it."); (id. at 29:1-6) ("I give no weight to that . . . conclusion on her behalf. . . . [I]t's strictly a conclusion and I don't consider that any evidence.").

In her declaration, Ms. Sullivan stated that "MET never had any control or dominion over the $100,000[,]" (see Adv. Pro. Dkt. 23, Sullivan Decl. at ¶ 19), and that she has "personal knowledge of the facts set forth [in the declaration] and, if called to testify, would and could competently testify thereto." (Id. at ¶ 1). As an initial matter, there is no basis to conclude that Ms. Sullivan was not competent to provide the testimony she provided in her declaration. (See, generally, Dkt. 40-4, MSJ Joint Br. at 21-25). Without weighing the declaration or making any sort of credibility determination, see T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Assn., 809 F.2d 626, 630 (9th Cir. 1987) (The judge does not "make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial."), it appears that Ms. Sullivan's declaration, even without the attached exhibits, contained factual statements – not conclusions – regarding the timing of the transfer of the payment (which was immediate) from Met's lawyers to the eventual recipient, and whether Met ever had access to the money (it didn't, only the law firm did). (See Adv. Pro. Dkt. 23, Sullivan Decl. at ¶¶ 18-19); Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000) (summary judgment reversed where "declarations set forth facts based on personal knowledge that give rise to a

triable issue" of fact); see also Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) (holding that a party "does not necessarily have to produce evidence in a form that would be admissible at trial" for that evidence to be considered at the summary judgment stage); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that, on summary judgment, the court "do[es] not focus on the admissibility of the evidence's form" but rather "focus[es] on the admissibility of its contents"). In other words, Ms. Sullivan – whose firm handled the transfer of funds from debtor to Legalist – had personal knowledge of the facts which she described in the declaration. (See Adv. Pro. Dkt. 23, Sullivan Decl. at ¶¶ 1, 16-20); see, e.g., Sheet Metal Workers' International Assn. Local Union No. 359 v. Madison Ind., Inc., 84 F.3d 1186, 1193 (9th Cir. 1996) (district court erroneously concluded that affiant lacked personal knowledge where "affidavit stated that he had personal knowledge of the facts to which he testified . . . [and] he was in a position to have such knowledge"). In short, the Bankruptcy Court's grant of summary judgment must be reversed.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. The Bankruptcy Court's Confirmation Order **(Br. Dkt. 763)** and accompanying Confirmation FFCL **(Br. Dkt. 762)**, are **reversed** and **remanded**.

2. The Bankruptcy Court's Dismissal Order **(Br. Dkt. 760)** is **vacated** and **remanded**.

3. The Bankruptcy Court's Contract Order **(Br. Dkt. 761)** is **reversed** and **remanded**.

4. The Bankruptcy Court's MSJ Order **(Adv. Pro. Dkt. 34)** is **reversed** and **remanded**.

5. Judgment shall be entered accordingly.

6. The Clerk shall serve a copy of this Order and the Judgment on the Bankruptcy Court.

Dated this 29th day of March, 2024.

/s/
Fernando M. Olguin
United States District Judge